# <u>EXHIBIT 1</u>

Electronically FILED by Superior Court of California, County of Los Angeles on 02/05/2021 10:53 AM Sherri R. Carter, Executive Officer/Clerk of Court, by H. Flores-Hernandez,Deputy Clerk

Assigned for all purposes to: Stanley Mosk Courthouse, Judicial Officer: Monica Bachner

1  DAVID D. LIN*
2  JUSTIN MERCER*
   LEWIS & LIN, LLC
3  81 Prospect Street, Suite 8001
4  Brooklyn, NY 11201
   Tel: (718) 243-9323
5  Email: David@iLawco.com
6  Email: Justin@iLawco.com
   *pro hac vice application forthcoming
7
8  JIANMIN ZHOU (SBN: 272487)
9  Law Offices of James Zhou
   17700 Castleton Street, Suite 568
10 City of Industry, CA 91748
11 Tel: (626) 566-5511
   Email: jzhou@zhoulawoffices.com
12
13 *Attorneys for Plaintiff*

14          **SUPERIOR COURT OF THE STATE OF CALIFORNIA**
15             **FOR THE COUNTY OF LOS ANGELES**
16

| ACHRAF SAFIEDDINE, | Case No:  21STCV04636 |
|---|---|
| Plaintiff, | **COMPLAINT FOR:** |
| vs. | (1) Defamation – Libel and Slander; and |
| MBC FZ, L.L.C. d/b/a MBC Group a/k/a Middle East Broadcasting Services; AL ARABIYA NEWS CHANNEL FZ LLC; MIDDLE EAST NEWS FZ LLC; and JOHN DOE, operator of website <gfatf.org>, | (2) Intentional Infliction of Emotional Distress |
| Defendants. | |

17
18
19
20
21
22
23
24
25
26
27
28

COMPLAINT
1

Plaintiff ACHRAF SAFIEDDINE ("Plaintiff," "Attorney Safieddine" or "Mr. Safieddine")    by and through his undersigned counsel, alleges as follows:

## STATEMENT OF CASE

1.      Mr. Safieddine is a United States citizen, an attorney, and the victim of scandalous and false allegations made by Defendants in written "news" articles on the Internet and orally via "news reports" broadcast to California residents via satellite in the United States and republished throughout the world on YouTube.

2.      Defendants MBC FZ LLC, AL ARABIYA NEWS CHANNEL FZ LLC, and MIDDLE EAST NEWS FZ LLC are all companies within the "MBC Group," one of the largest media and broadcasting conglomerates based in Dubai, United Arab Emirates (UAE), and two of the media outputs of the MBC Group include the "news" channels, *Al Arabiya* and *Al Hadath*.

3.      Sometime on or around September 1, 2020, Defendant JOHN DOE, operator of website <gfatf.org> (an acronym for "Global Fight Against Terrorist Funding") authored a false and defamatory "report" (the "GFATF Report") claiming that Mr. Safieddine was "a lawyer with offices in Beirut and California, that is experienced in building corporate structures for Hezbollah" and helped funnel stolen money from Lebanon to California on behalf of Hezbollah political and militia leader, Hassan Nasrallah.

4.      Then on September 20, 2020, the MBC Group Defendants published two articles on their websites <AlArabiya.net> and <AlHadath.net>, that relied exclusively on the false GFATF Report, amplifying the false allegations therein as to Mr. Safieddine.    Then, most egregiously, on that same date, the MBC Group Defendants broadcast and livestreamed a "news report" video version of their false web articles on their *Al Arabiya* and *Al Hadath* news channels. Thereafter, the MBC Group Defendants published two videos of the

COMPLAINT
2

same false news report on their YouTube channel.

5.     The objectionable provisions of the articles and "news reports"— which accuse Mr. Safieddine, an accomplished lawyer with a stellar reputation, of engaging in "money laundering" for Hezbollah, a designated terrorist organization —are demonstrably false.   Mr. Safieddine has no connection to Hezbollah whatsoever and has never engaged in the money laundering schemes that Defendants accuse him of.

6.     The GFATF Report has received more than 43,000 page views. The MBC Group Defendants' videos have received more than 20,000 views collectively, and upon information and belief, their broadcast reached millions of viewers.

7.     Such widespread false allegations are likely to and have caused Mr. Safieddine irreparable reputational and economic harm.   Indeed, because of the widespread, and attention-grabbing nature of these false charges, others have plucked straight from Defendants' articles and videos those false allegations regarding Mr. Safieddine.

8.     Thus, Plaintiff brings this Complaint for damages and injunctive relief to seek redress for and stop Defendants' blatant and unambiguous unlawful conduct as described herein.

## PARTIES

9.     Plaintiff Mr. Safieddine is a United States citizen, residing in Beruit, Lebanon, who maintains a domicile in Los Angeles County, California.

10.     On information and belief, MBC FZ, L.L.C., d/b/a MBC Group a/k/a/ Middle East Broadcasting Services ("MBC FZ"), is a limited liability company that was duly formed under the laws of the Dubai Media City, United Arab Emirates. The parent company of MBC FZ is MBC Group Holding Limited BVI.

11.     On information and belief, AL ARABIYA NEWS CHANNEL FZ

COMPLAINT
3

LLC ("AAN FZ"), is a limited liability company that was duly formed under the laws of the Dubai Media City, United Arab Emirates.

12.    On information and belief, MIDDLE EAST NEWS FZ LLC ("MEN FZ"), is a limited liability company that was duly formed under the laws of the Dubai Media City, United Arab Emirates.

13.    The true name and capacity of the Defendant sued herein as "John Doe" is unknown to Plaintiff, who sues Defendant under such fictitious name. Defendant John Doe created and maintains the Internet-based, defamatory Report denigrating Plaintiff on the website <gfatf.org>. Upon information and belief, John Doe is not a citizen of California. Upon information and belief, the Doe Defendant is engaged in commerce in the United States, including within this judicial district.    The website <gfatf.org> does not provide contact information for its author(s).    If necessary and after discovery, Plaintiff will seek leave of court to amend this Complaint to state true name when it is ascertained.

## JURISDICTION AND VENUE

14.    The conduct giving rise to this matter substantially occurred in Los Angeles County.

15.    This Court has personal jurisdiction over Defendants pursuant to Cal. Code Civ. Proc § 410.10, because Defendants transact business in California, committed tortious acts within California, and/or caused injury to Mr. Safieddine in California, and Mr. Safieddine's claims arise from those activities.

16.    Plaintiff seeks an award of damages in excess of the jurisdictional limits of all lower courts, as well as injunctive relief.

## COMMON ALLEGATIONS

17.    Mr. Safieddine is a U.S. citizen and a lawyer practicing in Lebanon.

COMPLAINT
4

1   18.    As a part of his practice, Mr. Safieddine assists between 35 and 50

2   active companies and individuals with corporate formation and business advice

3   in Lebanon and abroad.

4   19.    Indeed, Lebanese law *requires* every LLC or corporation to elect

5   an attorney for ministerial filing functions.

6   20.    Mr. Safieddine's role with these companies is and would otherwise

7   be innocuous as it relates to the dozens of other entities he performs the same

8   routine legal functions for.

9   21.    In addition, as a U.S. citizen, Mr. Safieddine maintains

10   relationships, both personal and business, with individuals in the U.S.,

11   specifically in California—where he maintains his domicile.

12   22.    Upon information and belief, Mr. Safieddine is the only lawyer in

13   Lebanon, and possibly in the Middle East, accredited as U.S. International

14   Traffic of Arms Regulations (ITAR), OFAC, and Export Administration

15   Regulation Compliance Professional.

16   23.    Despite this status, Mr. Safieddine is a private figure, and has no

17   political affiliations in either Lebanon or the United States.

18   24.    While for most individuals and lawyers, Mr. Safieddine's legal

19   roles in Lebanon and unrelated relationships in California would be innocuous,

20   the Defendants' reports and articles have distorted reality by mutilating minimal

21   facts to create the appearance of impropriety on his part, when none exists.

22

23   **Defendants' Targeting of the United States and California's Arab**

24   **American Population**

25   25.    Defendant MBC FZ LLC ("MBC FZ") is a producer and

26   broadcaster of television stations of interest to Middle Eastern communities

27   throughout the world, including specifically in the United States.   It is the

28   owner and main operating company under the broader "MBC Group," which

COMPLAINT
5

includes, *inter alia*, Defendants MEN FZ and AAN FZ.

26.    Upon information and belief, the MBC Group is owned in whole or in part by the Saudi government.

27.    *Al Arabiya* and *Al Hadath* are news outlets and channels produced by AAN FZ, and broadcast by MBC FZ and/or MEN FZ to the MBC Group's broadcast partners and distributors all over the world.

28.    The MBC Group's Website lists the *Al Arabiya* and *Al Hadath* websites (the "MBC News Websites") as two of MBC FZ's online platforms, and each of the respective news channels as two of the MBC Group's channels (the "MBC News Channels").

29.    Upon information and belief, and according to disclaimers posted by the U.S. operators of social media platforms, such as YouTube, *Al Arabiya* and *Al Hadath* are "funded in whole or in part by the Saudi government."

30.    Upon information and belief, MEN FZ controls all relevant contractual rights for AAN FZ and owns/controls the MBC News Websites and the social media channels.

31.    Upon information and belief, journalists and broadcasters who author, publish and produce content for AAN FZ's news outlets are employed by MEN FZ directly.

32.    MBC FZ shares premises and addresses with MEN FZ and AAN FZ (MBC FZ, AAN FZ and MEN FZ are collectively referred to herein as the "MBC Group Defendants").

33.    The MBC Group Defendants have spent decades attempting to target the United States Arabic-speaking market.

34.    For instance, MBC FZ has done business with U.S. based DISH Network LLC ("DISH") for more than 15 years and, since at least 2008, has granted DISH an exclusive license to distribute certain Arabic language programming, including but not limited to live broadcasts of the MBC Group

1
2
Defendants' *Al Arabiya* and *Al Hadath* channels, to DISH's and its affiliates' subscribers in the United States, including California.

3
4
5
6
35.    DISH Network carries and distributes the MBC Group Defendants' *Al Arabiya* channel (which shares content with their *Al Hadath* channel) to DISH customers throughout the United States, including specifically to California.

7
8
36.    For instance, a live-stream of *Al Hadath*'s broadcasts are available on https://www.alarabiya.net/ar/live-stream-hadath.

9
10
11
12
13
14
37.    Upon information and belief, California, specifically, is a significant target market for the MBC Group Defendants' *Al Arabiya* and *Al Hadath* broadcasts, insofar as California has the largest number of Arabic speakers in the United States, and Los Angeles (308,295) and San Francisco Bay Area (250,000) are home to the 3rd and 4th largest concentration of Arab Americans, respectively.

15
16
17
18
19
20
21
22
38.    Indeed, MBC FZ's CEO, Marc Antoine d'Halluin, has sworn and testified as recently as July and August 2020 in U.S. federal court pleadings, that because "the United States [is] home to around *4,000,000 Arabic speakers* [and] (the target market for [MBC FZ's broadcast services])" MBC FZ not only engaged U.S. companies like DISH to distribute its video content in the United States to enhance "MBC's expectations for successful market penetration," but MBC FZ also "decided to launch [its own video service], that provides content *directly to consumers in the United States . . .*" (emphasis added).

23
24
25
26
39.    MBC FZ's CEO, Mr. d'Halluin, has further sworn in U.S. federal court pleadings that "MBC [FZ] has already spent more than $100 million on content, technology, marketing, and commercial operations to launch" its own video service directly to U.S. customers, averring that:

27
28
"The United States market is a key component of MBC's decision to launch this new OTT service for commercial and editorial reasons. MBC

COMPLAINT
7

1
2
3
4
5

has already invested millions of dollars to clear the rights for content to be used in the United States market and is preparing a direct-to-consumer launch for the United States on October 1, 2020. I estimate that MBC has already spent an estimated $10 million on technology, a new English-language user Interface, content, marketing, sales, and management in preparation to launch this service in the United States."

6
7
8
9

40.    The MBC Group Defendants' targeting of the United States and California, in advance of the events described herein, did not stop simply with contracting with DISH to distribute its live *Al Arabiya* and *Al Hadath* broadcasts or launching its own direct-to-U.S. consumer video for same.

10
11
12
13
14
15

41.    In 2016, the MBC Group partnered with the University of Southern California School of Cinematic Arts (USC), in Los Angeles, California, to organize entertainment industry gatherings in California and professional exchange programs between USC students and MBC, with "the aim of promoting tolerance through positive storytelling in the Arab world," i.e., to promote the MBC Group Defendants' broadcast services in California.

16
17
18
19
20
21

42.    Then, in 2019, The MBC Group strengthened their ties to USC when it    launched an initiative designed "to build closer working ties between Hollywood and the Middle East and North Africa (MENA)" called the "Creative Communities Collaboration (CCC), . . .a public-private association of global media and entertainment executives set up in L[os] A[ngeles, California] by MBC in partnership with [USC]."

22
23
24
25
26

43.    While attending an August 2019 launch event for CCC in Beverly Hills, California, MBC Group TV director Ali Jaber said: "These cross-cultural initiatives are crucial to us, particularly in this current media climate. We want to provide the opportunity for both US and MENA TV production entities to discover and work with one another's talent . . ."

27
28

44.    Upon information and belief, the MBC Group Defendants' ties with the California entertainment and broadcast industry, to USC, and to the

COMPLAINT
8

largest Arab American population in the U.S. via over-the-air broadcasts of its news channels are buoyed by the MBC Group Defendants' product of content that said California audience would be interested in and directly related to "MBC's [stated] expectations for successful [U.S.] market penetration."

45.     In addition, upon information and belief, the MBC News Websites have domains that are registered in and websites that are hosted in the U.S.

46.     According to publicly available documents, <AlArabiya.net> is registered with Network Solutions in Florida and hosted on web servers located in Los Angeles, California.

47.     According to publicly available documents, <AlHadath.net> is registered with GoDaddy in Arizona and also hosted on web servers located in Los Angeles, California.

48.     Likewise, while Defendant John Doe's actual location and identity is unknown, according to publicly available documents, Doe's <gfatf.org> is hosted on web servers located in California.

**Defendants' Wrongful and Defamatory Conduct**

49.     In a website article dated July 29, 2020, on "GFATF | Global Fight Against Terrorism Funding" (accessible on the Internet at https://www.gfatf.org/archives/ashraf-assem-safieddine/), Defendant John Doe first accused Mr. Safieddine, an accomplished lawyer with a stellar reputation, of "found[ing]" a company that "laundered substantial sums of U.S.-denominated currency for the [Hezbollah's Business Affairs Component]" and otherwise claims he was involved with a scheme of "fraud," "corruption" and "money laundering." The July 29th article further identifies Mr. Safieddine as one of several "Lebanese certified terrorists," inclusive of a picture of him.

50.     The above statements are completely false and defamatory.

51.     Then, sometime on or around September 1, 2020, Defendant John

1    Doe, operator of website <gfatf.org> authored another false and defamatory

2    "report" (the "GFATF Report") claiming that Mr. Safieddine—identified in the

3    Report as "Achraf Safi al Din"—was "a lawyer with offices in Beirut and

4    **California**, that is experienced in building corporate structures for Hezbollah"

5    and helped funnel stolen money from Lebanon to California on behalf of

6    Hezbollah political and militia leader, Hassan Nasrallah.

7         52.     The GFATF Report includes a "organizational chart" purporting to

8    trace the falsely allege flow of Hezbollah money and influence to Mr.

9    Safieddine and through the United States:



22         53.     The GFATF Report, a copy of which is annexed hereto as **Exhibit**

23    **A**, is accessible on the Internet at www.gfatf.org/archives/nasrallahs-secret-

24    fraud/.

25         54.     The above statements are completely fabricated, false, and

26    defamatory.

27         55.     According to a page-view counter on the GFATF website, the

28    GFATF Report has received more than 43,000 views.

COMPLAINT

10

56.     Then on September 20, 2020, the MBC Group Defendants published a series of two articles on their websites <AlArabiya.net> and <AlHadath.net>, that relied exclusively on the false GFATF Report, amplifying the false allegations therein as to Mr. Safieddine.

57.     First, on September 20, 2020, the MBC Group Defendants published an article titled, in translation "The Resurrection scenario: How the Hezbollah leader managed to smuggle 1.6 billion U.S. dollars" on their MBC News Website at https://www.alarabiya.net/ar/arab-and-world/2020/09/20/ حزب-الله [translation "Hezbollah"], which defames Plaintiff (the "Al Arabiya Web Article"). A true and correct copy of the Al Arabiya Web Article is annexed hereto as **Exhibit B**.

58.     Next, on the same September 20, 2020, https://www.alhadath.net/alhadath/2020/09/20/ حزب-الله [translation "Hezbollah"], which is nearly identical and also defames Plaintiff (the "Al Hadath Web Article"). A true and correct copy of the Al Hadath Web Article is annexed hereto as **Exhibit C**.

59.     In relevant part, both the Al Arabiya Web Article and Al Hadath Web Article each state, translated in relevant part as follows:

> Hezbollah militia leader Hassan Nasrallah has succeeded in allocating funds in various accounts outside Lebanon, estimated at [$]1.6 billion, just like other   Lebanese politicians, according to the "GLOBAL FIGHT AGAINST TERRORISM FUNDING" report.

> For years, Nasrallah had been preparing for a "doomsday" scenario in which he would be forced to flee and disappear. According to information from various sources, the money earmarked to accomplish this disappearance is somewhat fraudulent [in] that [it] involves transferring large sums of money to accounts abroad that have been transferred to his family and close associates.

> These funds, located in accounts outside of Lebanon, have been estimated

COMPLAINT
11

1
2
3
4
5

to be worth one billion six hundred million US dollars. As for its sources, they are varied, the first being direct transfers from the budget of Hezbollah or from the militia's various financial backers and companies, and of course some it comes from Iran. The second source is theft directly from the Lebanese state. The money is transferred by politicians loyal to Hezbollah through committees in parliament that are led by Hezbollah, then they are transferred abroad.

6
7
8

These operations are carried out by people who are close to Nasrallah, like family members and high-ranking figures in Hezbollah.

        *    *    *

9
10
11
12

The third person is Achraf Safi Al Din, a lawyer with offices in Beirut as well as California who is an expert in building corporate structures for Hezbollah companies all over the world that launder money for Hezbollah. These corporations receive accounting services from accounting firms of world-wide fame like KPMG, of which two directors have direct connections with Achraf Safi Al Din and Jawad Nasrallah.

13
14

        *    *    *

15

**Corruption and theft operations**

16
17
18

The little we know about this particular pathway is that funds are transferred to "these companies from Beirut with the help of accountants at KPMG," the [GFTAF] report says.

19

The fourth and final corporate structure is in the United States.

20
21
22
23
24
25
26

Ashraf Safi El Din has opened dozens of companies in the past that deal mainly in real estate [in California]. For the purpose of this particular corporate structure, Safi El Din acquired two bankrupt American real estate companies. Funds are transferred to these companies from Lebanon to another Ashraf al-Din company in the United States called "Premiere Equities and Investment Group Inc." and from these companies['] funds make their way in small sums (less than $10,000) to an account in Europe under the name ["]Ashraf.["]

*See* Exhibits B and C (Emphasis in originals.)

27
28

    60.    According to public records, Premiere Equities and Investment

COMPLAINT
12

1   Group Inc. is dissolved a California corporation whose offices were in Los
2   Angeles County, California.

3        61.   Then, most egregiously, on that same September 20, 2020, the
4   MBC Group Defendants broadcast and livestreamed a "news report" video
5   version of their false web articles on their *Al Arabiya* and *Al Hadath* news
6   channels (the "September 20th Broadcast").

7        62.   Upon information and belief, the September 20th Broadcast in the
8   United States (specifically to DISH customers residing in California), as MBC
9   Group Defendants target the state of California with their DISH-proxy video
10  content and advertisements.

11       63.   Specifically, in the September 20th Broadcast, MBC Group
12  Defendants' included a screenshot of Doe's GFATF English-language
13  "organization chart" (see Exhibit A) displaying Mr. Safieddine's name and
14  arrows showing "money flow" from "Hezbollah Businesses" to Mr. Safieddine
15  and then to the "United States":

16
17
18
19
20
21
22
23
24
25
26
27
28

COMPLAINT
13

عمليات احتيال تتضمن
تحويل مبالغ كبيرة من
المال لحسابات بالخارج

تمويل خطة نصرانه ـ الفرار

Hassan Nasrallah

Hashem Safi al Din

Ashraf Safi al Din

State Funds

Organization Fina

Hezbollah Business

KPMG

Al Arabiya is funded in whole or in part by the Saudi government. Wikipedia

ستوديو الحدث | تقرير يكشف عن حجم ثروة حسن نصر الله وواشنطن تعيد العقوبات على إيران

4,675 views • Sep 20, 2020

64.    The Defendants' representations as to Mr. Safieddine are completely false.

65.    By linking Mr. Safieddine to the Hezbollah political and militia leader, Hassan Nasrallah, and using the words "money laundering," "corruption" and "theft" in association with Mr. Safieddine's legal practice and real estate ownership in California, the MBC Group Defendants intentionally attempted to bring Mr. Safieddine's reputation (both personal and professional), credibility and good will in ill repute.

66.    Then, in the September 20th Broadcast, the MBC Group Defendants reporter states, translated in relevant part as follows:

Let's talk a little about what has been revealed concerning the funding of Hezbollah and how much Hassan Nasrallah actually owns according to

COMPLAINT
14

reports, and the "Plan B" or the "Doomsday Scenario" that has been planned by the leader of the Hezbollah militia for many years according to various sources.

This contingency plan consists of escaping and hiding, and has been allocated massive amounts of money originating from fraud operations that include transferring large sums of money to foreign accounts, mostly accounts belonging to close family members.

These funds, located in accounts outside of Lebanon, have been estimated to be worth one billion and 600 million US dollars. They come from various sources the first of which is direct transfers from the budget of Hezbollah or from the militia's various financial backers and companies, and of course some it comes from Iran. The second source is theft directly from the Lebanese state. The money is transferred by politicians loyal to Hezbollah through committees in parliament that are led by Hezbollah, then they are transferred abroad.

These operations are carried out by people who are close to Nasrallah, like family members and high-ranking officials - high-ranking in Hezbollah, of course.

\*       \*       \*

The third person is **Achraf Safi Al Din, a lawyer with offices in Beirut as well as California** who is an expert in building corporate structures for Hezbollah companies all over the world that **launder money for Hezbollah**. These corporations receive accounting services from accounting firms of world-wide fame like KPMG, of which two directors have direct connections with **Achraf Safi Al Din** and Jawad Nasrallah.

(emphasis added).

67.    These statements concerning Mr. Safieddine are completely false and fabricated.

68.    Mr. Safieddine is not connected with Hezbollah, has no association or relationship, business or otherwise, with Mssrs. Hassan Nasrallah or Jawad Nasrallah.

69.    Mr. Safieddine is not an "an expert in building corporate structures

COMPLAINT
15

for Hezbollah companies." He has never knowingly or directly been involved with any person, business or entity with any tie or connection to Hezbollah or its activities. Again, Mr. Safieddine has no political affiliations in either Lebanon or the United States, much less any affiliation with Hezbollah.

70. Mr. Safieddine has also never "lauder[ed] money for Hezbollah."

71. Critically, no money or asset was ever given, gifted, transferred, pontificated or promised to Mr. Safieddine either via his role as a legal representative for any company or with regard to any "Hezbollah business," much less from any individual identified in the Broadcast. This lack of monetary transfers is important, because the GFATF Report—upon which the September 20th Broadcast relies—states that Mr. Safieddine's mere association with random entities and the existence of real estate records in California as the basis for its false conclusion that money laundering (specifically money laundering to support a Hezbollah leader's "secret fund") occurred.

72. Thereafter, the MBC Group Defendants published two videos of the same false news report on their YouTube channel.

73. On September 20, 2020, the MBC Group Defendants published on their *Al Hadath* YouTube channel a one-hour Arabic language video of the September 20th Broadcast (the "September 20th YouTube News Report"). September 20th YouTube News Report is available and can be viewed on the MBC Group Defendants' *Al Hadath* YouTube account at https://www.youtube.com/watch?v=OKUEln7AZew. To date, the September 20th YouTube News Report on the MBC Group Defendants' *Al Hadath* YouTube channel, in which the clip where Mr. Safieddine is defamed, has been viewed more than 4,700 times.

74. While the hour-long September 20th YouTube News Report contains several topics, the clip where Mr. Safieddine is defamed is the first and "top story" of the MBC Group Defendants' news program.

COMPLAINT<br>16

75. A separate, condensed 2-minute 47-second version of the September 20th YouTube News Report including *only* the story regarding Mr. Safieddine was also published on the same date and on the same YouTube channel. It can be viewed at https://www.youtube.com/watch?v=qm5GCtQvgVg. To date, that version of the September 20th YouTube News Report has more than 14,000 views—significantly more than the average views for videos or republication of broadcasts on the MBC Group Defendants' *Al Hadath* YouTube channel.

76. The MBC Group Defendants' *Al Hadath* YouTube channel has nearly *2 Million* subscribers and their sister channel *Al Arabiya* YouTube channel has over 8 Million subscribers. Upon information and belief, a significant portion of those subscribers reside in the United States and California.

77. Indeed, Mr. Safieddine first heard about the MBC Group Defendants' video content from friends and acquaintances who reside in California.

78. Admittedly, the MBC Group Defendants utilized YouTube.com, whose principal offices are located in California, to further distribute their video content to a *worldwide* audience.

79. However, the title of the September 20th YouTube News Report is, تقرير أميركي :ثروة نصرالله مليار و600 مليون دولار, which translates to "An **American** report: Nasrallah's fortune is one billion and 600 million dollars" (emphasis added).

80. This indicates that the focus and target of the MBC Group Defendants' reporting on that date was an *American* audience—specifically those within the lone U.S. state that was specifically mentioned in the video: California.

81. In addition, the MBC Group Defendants targeted the state of

COMPLAINT<br>17

EXHIBIT 1, PAGE 21

California with the intent to cause harm within the state, but referring to Mr. Safieddine's U.S. office and domicile—to wit: California—in the web articles, broadcast and videos.

82.    At no time during the nearly three weeks between the time the dubious GFATF Report was published and when the September 20th Broadcast aired, or the September 20th YouTube News Report was published, did anyone from the MBC Group Defendants reach out to Mr. Safieddine for comment, verification or support for their scurrilous statements made as to him.

83.    Besides coopting and copying whole cloth from the GFATF Report, upon information and belief, the MBC Group Defendants did not even conduct the most rudimentary inquiry or investigation in to the claims they made to their audience of millions before writing and stating the defamatory accusations against Mr. Safieddine.

84.    Critically, the most important component of all Defendants' accusations against Mr. Safieddine of criminal money laundering is missing— there is nor was any evidence, indicia or existence of any money, cash or other remuneration between Mr. Safieddine and any individual identified in their reporting, or any person period connected to or affiliated with Hezbollah. It was just made up.

85.    Notwithstanding this serious omission, the MBC Group Defendants' reports and Doe's GFATF article both mention that Mr. Safieddine caused these fictitious, Hezbollah-supported companies to "receive accounting services from the world-renowned accountancy firm, KPMG."

86.    Upon information and belief, the MBC Group Defendants repeated the accusation of affiliation with KPMG to stoke interest to its viewers in the United States and California, where KPMG has over 10 physical offices—about half of which are in the Los Angeles area.

87.    Upon further information and belief, the MBC Group Defendants

COMPLAINT
18

iniated these reports on Hassan Nasrallah and connected Mr. Safieddine, because, on or about August 29, 2020, on the MBC Group Defendants' News Websites, they claim that Mr. Hassan Nasrallah gave a live video address suggesting that people "boycott" the MBC Group Defendants' channels *Al Arabiya* and *Al Hadath*.

88.    According to the MBC Group Defendants' prior August 29, 2020 report, they claim Nasrallah said "[the] MBC Group pay[s] money to spread poisons and go beyond lying to provocation and insults against Hezbollah[.] They depend on a policy of pumping media via attack articles and social media. When you turn on the television, each attack comes at the same time, because they all have the same management[.]"

89.    Upon further information and belief, Hezbollah operates or controls its own media outlets which compete with the MBC Group Defendants' News Channels.

90.    Upon further information and belief, a contentious political relationship exists between Lebanon and the UAE, including the Saudi government—which owns, controls and/or funds (in whole or in part), the MBC Group.

91.    Thus, upon information and belief, Mr. Safieddine is an innocent bystander in the MBC Group Defendants' attack against another person who is and was a vocal critic of their services.

92.    Upon further information and belief, the MBC Group Defendants used Mr. Safieddine's connection with the United States and his business relationships in Lebanon (where, upon information and belief, Mr. Hassan Nasrallah resides and operates) to not only further publicize their attack against their critic, but also to amplify their dispute to an audience in the United States (specifically California) who might be interested in a salacious (but false) story involving Hezbollah and a U.S. citizen.

COMPLAINT
19

**Defendants' Claims Cause Mr. Safieddine Irreparable Reputational Harm**

93.    The outrageous, scandalous and false allegations of "money laundering" and knowingly assisting terrorist organizations are extremely damaging to Mr. Safieddine's personal and professional reputations, as a U.S. citizen, family man and attorney.

94.    Their claims cause Mr. Safieddine reputational and possible physical harm considering the GFATF Report in question and the MBC Group Defendants' publications are demonstrably false.

95.    That harm is exacerbated by the fact that he is, upon information and belief, the only U.S. citizen and lawyer in Lebanon, and possibly in the Middle East, accredited as U.S. arms trafficking compliance professional, and such accusations appearing in U.S.-based publications can and will harm him in his profession directly and much more than any other lawyer or individual.

96.    "Hezbollah" is considered and enemy of state and is on U.S. and several international terrorist organization prohibition lists, according to various U.S. and international laws. Hezbollah is not only accused of terrorism, but also drug trafficking and money laundering—activities Mr. Safieddine has never been engaged in.

97.    These accusations by Defendants were not only published on U.S.-directed websites, by they are also were broadcast in the homes of potentially hundreds of thousands of California residents. Thus, the harm is not only to Mr. Safieddine's name and business future, it is becoming real and could likely turn into physical harm at any time by the *real* agents of Hezbollah, on Mr. Safieddine, personally, and his family, including my wife and children in the U.S.

98.    In sum, Mr. Safieddine has never been involved in the alleged wrongdoing attributed to him in the GFATF Report in question and the MBC Group Defendants' publications, broadcasts and videos.

COMPLAINT
20

**FIRST CLAIM FOR RELIEF**

**<u>Defamation – Libel and Slander in Violation of Cal. Civ. Code §§ 45 and 46</u>**

99.    Plaintiff realleges and incorporates by reference the allegations set forth above in paragraphs 1 through 98 above.

100.    Defendants intentionally made written and/or oral false statements of fact about Mr. Safieddine in the GFATF Report and the MBC Group Defendants' publications, broadcasts and videos.

101.    These statements were made maliciously and willfully, and were intended to and did cause harm to Mr. Safieddine's business integrity and personal reputation. The statements were made with reckless disregard for their truth or falsity or with knowledge of their falsity and with wanton and willful disregard of the reputation and rights of Mr. Safieddine.

102.    The aforementioned statements accuse Mr. Safieddine of serious crimes, and did and do have a tendency to injure Mr. Safieddine in his occupation, and directly injures him in respect to his office, profession, trade or business, either by imputing to him general disqualification in those respects which the office or other occupation peculiarly requires, or by imputing something with reference to his office, profession, trade, or business that has a natural tendency to lessen its profits.

103.    The aforementioned statements where made of and concerning Plaintiff and were so understood by those who read, heard or viewed Defendants' publication of them.

104.    Defendants have no privilege to assert the false and disparaging statements.

105.    As a direct and proximate result of Defendants' unlawful and deliberate conduct as set forth above, Plaintiff has been, and will continue to be, damaged.

106.    Accordingly, Mr. Safieddine prays for entry of judgment in his

COMPLAINT
21

1  favor and against Defendants for presumed, actual damages, and punitive and
2  exemplary damages, in the sum in excess of the jurisdictional limits of all lower
3  courts, as well as injunctive relief, enjoining further publication of the GFATF
4  Report and the MBC Group Defendants' publications, broadcasts and videos,
5  that Defendants engage in appropriate remediation, including but not limited to
6  publishing retractions or corrections, and for an award of costs and interest.
7
8                           **SECOND CLAIM FOR RELIEF**
9                     <u>**Intentional Infliction of Emotional Distress**</u>
10        107.   Plaintiff realleges and incorporates by reference the allegations set
11  forth above in paragraphs 1 through 98 above.
12        108.   The Defendants' conduct, statements, broadcasts and publications
13  above contain false, fraudulent, and defamatory information about Mr.
14  Safieddine, including accusing him of serious crimes of money laundering and
15  aiding terrorist organizations.
16        109.   Given the individuals that Defendants have falsely associated Mr.
17  Safieddine with have been alleged (if not already shown) to exact physical
18  violence, Mr. Safieddine has and has had a genuine concern that physical harm
19  to him and his family is likely to result based on the purported allegations
20  espoused in in the GFATF Report and the MBC Group Defendants'
21  publications, broadcasts and videos.
22        110.   The Defendants intended to cause Mr. Safieddine emotional
23  distress and/or acted with complete reckless disregard of the probability that
24  Mr. Safieddine would suffer severe emotional distress, knowing that the threat
25  of physical violence against Mr. Safieddine (whether by those who support or
26  oppose the persons with whom Defendants associated him with) could likely
27  occur.
28        111.   Defendants' unlawful conduct was extreme and outrageous—

COMPLAINT
22

1
2
3
4

insofar as it exposes Mr. Safieddine to emotional and physical harm by broadcasting these accusations as "news" stories with top billing across the world— and has caused and continues to cause Mr. Safieddine extreme and severe emotional distress.

5
6
7

112.   As a direct and proximate result of Defendants' unlawful and deliberate conduct as set forth above, Mr. Safieddine has been, and will continue to be, damaged.

8
9
10
11

113.   Accordingly, Mr. Safieddine prays for entry of judgment in his favor and against Defendants for presumed, actual damages, and punitive and exemplary damages, in the sum in excess of the jurisdictional limits of all lower courts, and for an award of costs and interest.

12
13

## DEMAND FOR TRIAL BY JURY

14
15

Please take notice that Plaintiff hereby demands trial by jury for all issues so triable.

16

Dated:    February 3, 2021

17

**LAW OFFICES OF JAMES ZHOU**

18
19
20
21
22
23

Jianmin Zhou (SBN: 272487)
17700 Castleton Street, Suite 568
City of Industry, CA 91748
Tel: (626) 566-5511
Fax: (626) 965-1017
Email: jzhou@zhoulawoffices.com

24
25

*-and-*

26

**LEWIS & LIN, LLC**

27
28

COMPLAINT
23

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

David D. Lin, Esq.*
81 Prospect Street, Suite 8001
Brooklyn, NY 11201
Tel: (718) 243-9323
Fax: (718) 243-9326
David@ilawco.com
Justin@iLawco.com
*pro hac vice application
forthcoming

*Attorneys for Plaintiff*

COMPLAINT
24